UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|  |  |  |
|---|---|---|
| THE SIDING AND INSULATION COMPANY, individually and as a class of similarly-situated persons, | : : : : : : : : : : : : | |
| Plaintiffs, |  | CASE NO. 1:12-CV-01574 |
| vs. |  | OPINION & ORDER [Resolving Docs. No. 21, 22] |
| ACUITY INSURANCE COMPANY |  |  |
| Defendant. |  |  |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With its passage of the Telephone Consumer Protection Act ("TCPA"), Congress prohibited using a fax machine to send unsolicited advertisements.[1] Because the TCPA gives statutory damages of $500 per fax, junk fax recipients can bring class action suits that can result in large judgments.[2] As a result, both plaintiffs and defendants turn to insurance companies to satisfy these judgments. That is the case here.

In this declaratory judgment action, Plaintiff The Siding and Insulation Co., Inc. asks this Court to declare whether Defendant Acuity Insurance Company must indemnify the Beachwood Hair Clinic under a general commercial insurance policy.[3] The dispute comes from a settlement agreement the Siding Company, Acuity, and Beachwood reached in a TCPA class action where Beachwood hired a fax advertiser who sent unsolicited faxes on Beachwood's behalf.[4] Generally,

---

[1] 47 U.S.C. § 227 (2010).
[2] 30 A.L.R. Fed. 2d 537.
[3] Doc. 15 at 9.
[4] Doc. 15 at 2-3.

Case No. 1:12-CV-01574
Gwin, J.

the Siding Company says that Beachwood's faxes are covered under both the Policy's "advertising injury" and "property damage" provisions.[5] Responding, Acuity Insurance Company says that Beachwood's faxes are covered only by the Policy's "advertising injury" provision.[6] For the reasons below, the Court **GRANTS** Acuity's motion for summary judgment and **DENIES** the Siding Company's motion for summary judgment.

### I. Background

*A. Beachwood Hair Clinic*

The Beachwood Hair Clinic uses laser therapy to encourage hair growth.[7] In 2005, Beachwood entered into a general commercial insurance policy (the "Policy") with Acuity.[8] Thereafter, Beachwood hired an advertiser to send fax advertisements on its behalf.[9] The advertiser falsely told Beachwood that it did not send faxes without approval from the recipients.[10] Nevertheless, the advertiser sent unsolicited fax advertisements for Beachwood at least nine times.[11] The Siding Company received two of these faxes.[12]

*B. The Class Action*

In 2011, the Siding Company brought a class action suit against Beachwood, *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, No. 11-CV-1074 (N.D. Ohio May 26, 2011).[13]

---

[5] Doc. 21 at 9.
[6] Doc. 22-1 at 12.
[7] Doc. 15-1 at 15.
[8] Doc. 16 at 3.
[9] Doc. 15-2 at 7.
[10] Doc. 15-2 at 7.
[11] Doc. 15-2 at 7.
[12] Doc. 15-1 at 3. The advertiser sent all of Beachwood's faxes during the effective dates of the Policy.
[13] Doc. 15 at 2.

Case No. 1:12-CV-01574
Gwin, J.

There, the Siding Company said that the fax advertiser sent unsolicited faxes on Beachwood's behalf in violation of the TCPA.[14] The Siding Company and Beachwood settled that case.[15] First, the parties agreed to a stipulated judgment of $3,956,650.[16] Second, they agreed that the Siding Company would only collect monies available under the Acuity Policy.[17] Third, Acuity agreed to pay $1,956,650 to the Siding Company because the parties agreed that the faxes constituted "advertising injury" under the Policy.[18] Fourth, they agreed that they could each contest whether the Policy covered the remaining $2,000,000.[19] In June 2012, the Siding Company brought this action for a declaratory judgment.[20]

*C. The Insurance Contract*

The parties dispute the coverage under the Policy between Acuity and Beachwood.[21] Like many general commercial policies, the Policy insures Beachwood for two types of harm: (1) "property damage" arising from an "occurrence" and (2) "personal and advertising injury."[22] The parties agree that the faxes are "personal and advertising injury."[23] In response, Acuity paid $1,956,650 to the Siding Company.[24] In this case, the Siding Company says that the faxes are

---

[14] Doc. 15-1 at 8.
[15] Doc. 15-2.
[16] Doc. 15-2 at 5.
[17] Doc. 15-2 at 8-9.
[18] Doc. 15-2 at 5; Doc. 22-1 at 9 (Acuity says that "[t]he Underlying Action and the earlier cases were for damages because of personal and advertising injury." Acuity settled that case for $1,956,500, which counts against the General Aggregate Limit of $2,000,000).
[19] Doc. 15-2 at 9.
[20] Doc. 15 at 1.
[21] Doc. 15 at 4; Doc. 16 at 15.
[22] Doc. 15-3 at 43.
[23] Doc. 15-2 at 5; Doc. 22-1 at 9.
[24] Doc. 23 at 7; Doc. 24 at 2.

Case No. 1:12-CV-01574
Gwin, J.

separately covered under the Policy as "property damage" arising from an "occurrence."[25] The Policy defines an "occurrence" as "an accident."[26] But, the Policy also has an intentional tort exclusion. It does not cover "property damage" that was "expected or intended."[27]

The Policy also limits the amount of money that Acuity is obligated to pay. First, certain "property damage" falls under the "Products-Completed Operations Hazard" provision, which has an aggregate coverage limitation of $2,000,000.[28] Second, the "General Aggregate Limit" provision covers all other: (1) property damage caused by an occurrence and (2) personal and advertising injury.[29] It has a separate aggregate limit of $2,000,000.[30] The General Aggregate Limit applies separately to each of the insured's "projects."[31]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."[32] Here, both sides agree that this case turns on the written contract policy and the legal interpretation of that policy. No factual issues exist.

## III. Law & Analysis

Under Ohio law,[33] courts read contracts "as a whole and presume[] that the intent of the

---

[25] Doc. 15 at 5.
[26] Doc. 15-3 at 56.
[27] Doc. 15-3 at 45.
[28] Doc. 15-3 at 56.
[29] Doc. 15-3 at 56.
[30] Doc. 15-3 at 17.
[31] Doc. 15-3 at 53.
[32] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[33] The parties agree that Ohio law applies. *See* Doc. 21 at 12, Doc. 22 at 3.

Case No. 1:12-CV-01574
Gwin, J.

parties is reflected in the language used in the agreement."[34] Ohio law says that "[w]hen the 'terms of an insurance policy are clear and unambiguous,'" a court must "'appl[y] [them] to the facts without engaging in any construction.'"[35] When the terms are clear, a court must not "create a new contract by finding an intent not expressed in the clear language" of the contract.[36] If a term has a plain and ordinary meaning, the "mere absence" of a definition of that term in the policy does not make it ambiguous.[37] When the terms are "reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."[38]

*A. The Siding Company's Indemnification Theories*

The Siding Company says it should recover an additional $2,000,000 under the Policy for two reasons. First, it says that the faxes are both advertising injury *and* property damage caused by an occurrence.[39] It says that the General Aggregate Limit's $2,000,000 cap applies separately to advertising injury *and* property damage caused by an occurrence.[40] Alternatively, even if the General Aggregate Limit does not apply separately, the Siding Company says that the faxes are multiple "projects," and the General Aggregate Limit gives $2,000,000 for each project.[41] Second, it says that the faxes are covered under the Policy's Products-Completed Operations Hazard provision, which has its own $2,000,000 limit independent of the General Aggregate Limit.[42]

---

[34] *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 954 N.E.2d 104 (Ohio 2011).
[35] *Toledo-Lucas County Port Authority v. Axa Marine & Aviation Ins. (UK), Ltd.*, 368 F.3d 524, 530 (6th Cir. 2004) (citing *Ledyard v. Auto-Owners Mut. Ins. Co.*, 739 N.E.2d 1 (Ohio Ct. App. 2000)).
[36] *Shifrin v. Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992).
[37] *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995).
[38] *Clark v. Scarpelli*, 744 N.E.2d 719, 730 (Ohio 2001) (internal quotation omitted).
[39] Doc. 21 at 9.
[40] Doc. 21 at 9.
[41] Doc. 21 at 9.
[42] Doc. 21 at 9.

Case No. 1:12-CV-01574
Gwin, J.

Because the unsolicited faxes are not damage caused by an "occurrence," and because the faxes caused property damage that was expected or intended, the Court finds that Acuity is not obligated to indemnify Beachwood for an additional $2,000,000.

*B. Property Damage Caused by an Occurrence*

First, the Court finds that the unsolicited faxes are "property damage," but the faxes were not caused by an "occurrence." The Policy says:

> b. This insurances applies:
>> (1) To . . . *property damage* only if:
>>> (a) The . . . *property damage* is caused by an *occurrence* that takes place in the *coverage territory*.[43]

The Policy further defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.[44]

Here, Beachwood's faxes caused the Siding Company to lose the use of its property—its fax machine—while Beachwood's faxes were being transmitted. Moreover, Beachwood's faxes caused the Siding Company to lose tangible property in the form of paper, toner, and ink. Thus, under the Policy, Beachwood's faxes caused the Siding Company to suffer "property damage." In similar TCPA actions, federal courts of appeals have also concluded that faxes cause "property damage."[45]

---

[43] Doc. 15-3 at 43 (emphasis in original).
[44] Doc. 15-3 at 56 (emphasis in original).
[45] *See St. Paul Fire & Marine Ins. Co. v. Brother Intern Corp.*, 319 Fed. Appx. 121, 127 (3rd Cir. 2009) ("[T]he property damage here is the depletion of paper and toner."); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) ("Congress identified the loss of use of equipment and phone lines . . . [and] the expense of paper and ink . . . as examples of the harm to individuals."); *Am. States Ins. Co. v. Capital Associates of Jacksonville County, Inc.*, 392 F.3d 939, (7th Cir. 2004) ("[F]axes use up the recipients' ink and paper.").

Case No. 1:12-CV-01574
Gwin, J.

And here, the parties agree that the faxes caused "property damage" under the Policy.[46]

The Policy says that it covers "property damage only if" the "property damage is caused by an occurrence."[47] But, because the property damage—the loss of the use of the fax machine, toner, paper, and ink—was not caused by an "occurrence," the Policy's insurance coverage does not apply to Beachwood's faxes. The Policy defines an "occurrence" as "an accident," but does not further define "accident."[48] Ohio courts give "accident" its plain meaning: an event that is "unexpected, as well as unintended."[49]

Here, the Siding Company's loss of use of its fax machine, and its consumption of toner, ink, and paper was not caused by an accident. Beachwood intended the Siding Company's property damage because it hired the fax advertiser to send faxes on its behalf.[50] The Seventh Circuit has said that "all senders know exactly how faxes deplete recipients' consumables."[51] Beachwood knew that its faxes would deprive the Siding Company of the use of its fax machine, and cause it to consume toner, paper, and ink. Therefore, because Beachwood expected and intended the Siding Company's loss of the use of its fax machine and its consumption of toner, paper, and ink, the Court finds that Beachwood did not cause "property damage" by "accident." Therefore, the Policy's insurance does not apply because the "property damage" was not "caused by an occurrence."[52]

---

[46] Doc 21 at 14; Doc. 22-1 at 10.
[47] Doc. 15-3 at 43.
[48] Doc. 15-3 at 56.
[49] *Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 431 (Ohio 2009).
[50] Doc. 15-2 at 7.
[51] *Am. States Ins. Co.*, 392 F.3d at 943.
[52] The Siding Company cites to several cases to support its argument that the faxes are "property damage" caused by an "occurrence." *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1245 (10th Cir. 2006) ("In determining for insurance purposes whether the damages . . . [were caused by] an occurrence under a policy, the state of Kansas follows the natural and probable consequences test."); *Universal Underwriters Ins. Co.*, 401 F.3d 876 (8th Cir. 2005) (applying Missouri law to determine whether unsolicited faxes caused an "invasion of privacy"); *Hartford Mut. Ins. Cos. v. Agean, Inc.*, 1:09CV461, 2011 WL 2295036 at *5 (M.D.N.C. June 8, 2011) ("North Carolina courts have interpreted "accident" in insurance contracts to include those situations in which the act would not have

-7-

Case No. 1:12-CV-01574
Gwin, J.

*C. Expected or Intended Exclusion*

Even if Beachwood's faxes were "property damage" caused by an "occurrence," the Court finds that Beachwood expected or intended the property damage resulting from its faxes. The Policy has an intentional tort exclusion: "this insurance does not apply to . . . property damage expected or intended from the standpoint of the insured."[53] Interpreting a similar exclusion, the Ohio Supreme Court held that the exclusion applied only if the insured "'intended by his act to produce the damage which did in fact occur.'"[54]

Here, Beachwood intended its fax advertiser to send the faxes, and it intended the recipients', including the Siding Company's, lost use of its fax machine, toner, and ink. Beachwood intended the "act" that produced the Siding Company's "damage" because it hired the fax advertiser to send faxes on its behalf.[55] Moreover, Beachwood intended the Siding Company's damage: the loss of its tangible property. Beachwood knew that its faxes would deprive the recipient of the use of its fax machine and cause the recipient to lose toner, paper, and ink. Even if the faxes had been solicited, the result would be the same. Every successful fax causes the use of the recipient's paper, toner, and machine.[56] Thus, because Beachwood intended its advertiser to send the faxes, and because Beachwood intended the resulting property damage, the Court finds that Beachwood expected or intended the property damage caused by its faxes.

---

constituted an injury if the property owner consented."); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D.N.C. 2002) (applying North Carolina law). But these cases are not controlling, and they apply the law of different states. Many of those states apply a different definition of "accident" than Ohio applies. Because Ohio courts apply a different definition of "accident," the Siding Company's cases and argument is unpersuasive.

[53] Doc. 15-3 at 45.
[54] *Physicians Ins. Co. of Ohio v. Swanson*, 569 N.E.2d 906, 909 (Ohio 1991) (quoting *Eisenman v. Hornberger*, 264 A.2d 673, 674 (Pa. 1970)).
[55] Doc. 15-2 at 7.
[56] *See Brother Intern Corp.*, 319 Fed. Appx. at 121; *Am. States Ins. Co.*, 392 F.3d at 939; *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F.Supp. 2d 488 (E.D.Penn. 2006); *Western Rim Invest. Advisors, Inc. v. Gulf Ins. Co.*, 269 F.Supp. 2d 836 (N.D. Tex. 2003).

Case No. 1:12-CV-01574
Gwin, J.

The Siding Company argues that a number of Ohio cases have held that an insurance policy's intended or expected exclusion does not apply where a party committed an intentional act, but did not intend the resulting harm.[57] It says that the Siding Company's harm was not expected or intended from Beachwood's perspective because Beachwood did not intend its advertiser to send unsolicited faxes.[58] But unlike the insureds in those cases, Beachwood intended the property damage that resulted from its faxes—the Siding Company's loss of the use of its fax machine, and its consumption of toner, paper, and ink. Faxes, whether solicited or not, cause property damage because they deprive the recipient of the use of its fax machine and consume toner, paper, and ink. Thus, the Siding Company's argument is unpersuasive.

*D. Products Completed Operations Hazard*

Because the Court has found that Beachwood expected and intended the property damage, the Siding Company's argument that the faxes are covered by the Policy's Products-Completed Operations Hazard provision also fails. Under the Policy, the Products-Completed Operations Hazard provision applies to "all *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work*."[59] But the exclusion for "expected or intended" property damage applies to the Products-Completed Operations Hazard. Because the contract explicitly excludes coverage for such property damage, the Products-Completed Operations Hazard provision does not apply to Beachwood's faxes.

---

[57] *Swanson*, 569 N.E.2d at 906; *Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426 (Ohio 2009); *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555 (Ohio 1984); *Moler v. Beach*, 657 N.E.2d 303 (Ohio App. 1995).

[58] Doc. 21 at 18.

[59] Doc. 15-3 at 56 (emphasis in original).

-9-

Case No. 1:12-CV-01574
Gwin, J.

### IV. Conclusion

For the reasons stated above, this Court **GRANTS** Acuity's motion for summary judgment and **DENIES** the Siding Company's motion for summary judgment.

IT IS SO ORDERED.


Dated: June 26, 2013                         s/     *James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE